UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| JAGROOP SANDHU,<br><br>    Plaintiff,<br>v.<br>ENTERPRISE HOLDINGS, INC., *et al.*,<br><br>    Defendants. | Case No. 3:20-cv-00685-ART-CLB<br><br>ORDER |

Plaintiff Jagroop Sandhu, proceeding *pro se*, brings this action for race and national origin discrimination in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-2(a), and NRS 613.330(1). Plaintiff, who is Sikh Indian-American, alleges that during his employment with Defendants, the business entities doing business as Enterprise Rent-A-Car, he received a lower rate of pay than other similarly situated employees which he was not able to negotiate and that he was passed up for a promotion which was awarded to a less-qualified Caucasian woman. Before the Court are: (1) Defendants' Motion for Summary Judgment (ECF No. 34); and (2) Defendants' Motion to Dismiss Based on Plaintiff's Untrue *In Forma Pauperis* Application (ECF No. 35). Because Plaintiff has not proffered sufficient evidence of discriminatory intent to create a genuine issue of material fact for trial, the Court grants Defendants' Motion for Summary Judgment and denies Defendants' Motion to Dismiss as moot.

**I.    COMPLAINT**

Plaintiff filed his Complaint (ECF No. 6 ("Complaint")) on December 9, 2020, with an Application to Proceed *In Forma Pauperis* (ECF No. 1), and the Court screened Plaintiff's Complaint on January 26, 2021 (ECF No. 5). According to his Complaint, Plaintiff began his employment with Defendants on May 19, 2014, first as an Intern, then as a Management Trainee, and then was promoted to

1

Assistant Manager in May of 2016. (*Id.* at ¶¶ 14-20.) Plaintiff alleges that in September of 2016, several months after his promotion, his Area Manager Joseph Brandhagen "told Plaintiff that he was being paid too much and that his commission would be reduced from 4.5% to 4%." (*Id.* at ¶ 21.) When Plaintiff complained about the reduced commission, Mr. Brandhagen told Plaintiff that a promotion would become available in a month, and in October of 2016 Plaintiff was promoted to Assistant Manager of the Mill Street Enterprise Rent-A-Car location, the largest in the area. (*Id.* at ¶¶ 22-23.) A month later, Mr. Brandhagen informed Plaintiff of a new compensation plan which allegedly resulted in a reduction in Plaintiff's compensation, and when Plaintiff complained to Group Rental Manager Shane Jarrell, Mr. Jarrell refused to adjust Plaintiff's compensation plan. (*Id.* at ¶¶ 24-26.)

In March of 2017, Plaintiff was promoted again to Branch Manager, a position in which his duties covered three Enterprise locations: (1) the Sparks Enterprise; (2) the Fallon Enterprise; and (3) the Enterprise located in the Fallon Naval Air Station ("NAS"). (*Id.* at ¶ 27.) In this position, Plaintiff allegedly earned a commission based on approximately 65% of the revenue earned at the Sparks Enterprise and 35% at both the Fallon Enterprise and the Falon NAS Enterprise, alongside a base salary of $47,500. (*Id.* at ¶ 28.) Plaintiff allegedly knew from his time as an Intern at the Sparks Enterprise location that the former Branch Manager of the three locations, Paul Freeman, earned commission based on 100% of the revenue earned at those three Enterprise locations. (*Id.* at ¶ 29.) He also avers upon information and belief that other Branch Managers, a majority of whom are Caucasian, earned commission based on 100% of the revenue at the Enterprise locations they managed. (*Id.* at ¶ 30.) Plaintiff alleges that this disparity was due to his race and national origin. (*Id.* at ¶ 31.)

Plaintiff alleges that in September 2018, he was passed up for a promotion notwithstanding the fact that he won an award for Nevada Branch Manager of

2

the Year in August 2017. (*Id.* at ¶¶ 32-33.) The position was allegedly awarded to Plaintiff's assistant, Cheryl Perryman, who is Caucasian, notwithstanding the fact that Ms. Perryman was less qualified than Plaintiff. (*Id.* at ¶ 33.) Plaintiff alleges that he was passed up for the promotion due to his race and national origin. (*Id.* at ¶ 34.)

Plaintiff alleges that in September of 2018, he again attempted to discuss his compensation plan with Mr. Brandhagen, but Mr. Brandhagen did not respond for over a month. (*Id.* at ¶ 35.) Plaintiff states that he "gave his 'two weeks notice'" to Enterprise on October 17, 2018, and that his employment was terminated on that date. (*Id.* at ¶ 36.) Plaintiff brings four claims: one claim each for race and national origin discrimination under Title VII of the Civil Rights Act and NRS 613.330(1). Plaintiff attached his Nevada Equal Rights Commission Charge of Discrimination and his Right to Sue Letter to his Complaint.

## II. MOTION FOR SUMMARY JUDGMENT

Defendants brought a Motion for Summary Judgment on February 28, 2022. (ECF No. 34.) Defendants argue that Plaintiff has not met his burden to establish a genuine issue of material fact as to whether Plaintiff's compensation, the terms of his employment, and the denial of his promotion were motivated by discrimination. First, Defendants argue that Plaintiff was not paid differently than his similarly situated counterparts. Defendants explain that pay for Assistant Managers and Branch Managers is based upon a target pay amount that consists of a base salary and an estimated commission based on a percentage of the branch's profits. (*Id.* at ¶ 8.) The commission percentages are adjusted by Enterprise based upon the branch's previous 12-month revenue with a fiscal year running from August 1 to July 31, and the base salaries are adjusted each year for performance and cost of living. (*Id.*) Some Enterprise locations are much more profitable, so the commission percentages at those locations may be lower in order to meet a similar target pay as another Assistant or Branch

Manager at a less profitable location. (*Id.* at ¶ 11 n.20.)

In response to Plaintiff's allegation that Defendants reduced his commission from 4.5% to 4% in September of 2016 while he was Assistant Manager at the Downtown Reno Enterprise location, Defendants explain that Plaintiff's first pay plan had a target pay of $50,035 using a base salary of $33,700 and a 4.25% commission rate, and his second pay plan had a target pay of $52,112 using base pay of $34,700 and a 4% commission rate. (*Id.* at ¶¶ 9-10.) In other words, while his commission percentage rate may have been reduced, his target pay was actually increased by Defendants. Defendants support this explanation with a declaration from Caroline Johansen, the Human Resources Manager for Enterprise, as well as copies of Plaintiff's pay plans from May 1, 2016 to October 31, 2016 and from September 1, 2016 to February 28, 2016. (ECF No. 34-2 Exh. C.)

In response to Plaintiff's allegation that Enterprise reduced Plaintiff's compensation in November of 2016 after Plaintiff was promoted to Assistant Manager of the Mill Street Enterprise location, Defendants explain that Plaintiff's new pay plan after he was promoted to the Mill Street location had a target pay of $54,361 using a base salary of $34,700 and a 1.05% commission rate. (ECF No. 34 at ¶ 11.) This is also supported by Ms. Johansen's declaration and a copy of Plaintiff's pay plan. (ECF No. 34-2 Exh. C.)

Plaintiff contests this explanation by stating that he "did not agree with any of these 'pay plans' and tried to negotiate in good faith but was never given an opportunity [to] negotiate any pay plans during his tenure." (ECF No. 39 at 1.) He states that his predecessors were able to negotiate their pay plans but that when he was promoted, Susan Best, Plaintiff's "group controller," "decided to control every aspect and made it more difficult for all of the Plaintiffs counterparts to increase their pay through their own hard work" and "switched to pay plans without negotiation and a 'take it leave it' attitude by the Defendant." (*Id.* at 5.)

4

Defendants provide evidence showing that Plaintiff was not paid less than other employees with similar jobs. Defendants assert that it is simply not true, as Plaintiff contends, that he was paid based on 65% and 35%, respectively, of the revenue. Rather, he was paid a commission percentage based on 100% of the revenue at the three locations. (ECF No. 34 at ¶ 23.) Defendants support this with a copy of Plaintiff's pay plan for fiscal year 2016-17 as well as a declaration by Joseph Brandhagen. (ECF No. 34-2 Exh. C, Exh. D at ¶ 7.) Defendants state that Mr. Freeman's commission percentage at his departure was higher than Plaintiff's because Mr. Freeman had been a Branch Manager for several years prior to 2017. (ECF No. 34-2 Exh. D at ¶ 3.) Defendants further explain that Enterprise believed that Mr. Freeman had become the recipient of a "runaway" pay plan, i.e. a plan that was paying him too much for the size of the location he was running, and that the change in positions was an opportunity for Enterprise to correct this pay plan. (*Id.*) In response, Plaintiff states that "[i]t was the 'ideal time' for defendant to adjust the pay of a location as soon as a non-white manager was promoted to the location." (ECF No. 39 at 2.)

Defendants further argue that Plaintiff's target pay during his tenure as Branch Manager was approximately equal or favorable when compared to other Branch Managers who reported to Mr. Brandhagen. Defendants explain that when Plaintiff was promoted to the Branch Manager position in March 2017, his target pay was $61,024. (ECF No. 34 at ¶ 12.) Defendants provide the following anonymized information, supported by pay plan documents authenticated by the declaration of Ms. Johansen, regarding other Branch Managers' pay plans for the 2016-17 fiscal year: TH (Caucasian) ($56,011); EG (Caucasian) ($56,098); KD (African-American) ($57,028); JB (Asian) ($57,681); CG (Caucasian) ($57,757); MG (Caucasian) ($58,806); and SB (Asian, Indian-American male) ($62,586) (promoted to Branch Manager November 1, 2017). (*Id.* at ¶¶ 14-15; ECF No. 34-2 Exh. C). Plaintiff responds by stating that "[s]ome of these managers were out

of Las Vegas, NV which defendants decided had a higher cost of living then Reno, NV, hence not comparable[,]" and that "Employee [SB] is of South Indian descent and was treated differently than Plaintiff who is a Sikh Indian American. Proven by higher starting salary as a first time Branch Manager. This is another discriminatory action by Defendant, putting all Indian employees in one category, when they are two very different races in ideology and core values." (ECF No. 39 at 1.)

Defendants respond to the allegation that Plaintiff was not promoted to the RideShare Sales Executive position in September of 2018 by explaining that the comments for Ms. Perryman, who was hired, were more positive. One comment about Ms. Perryman was that "She had superior branch performance compared to the other three[,]" while Plaintiff had comments such as "Did not know FY performance, did not display strong research [or] understanding of how to prospect in this position, other candidate was more qualified." (ECF No. 34 at ¶ 24.) Defendants further explain, supported by a declaration from Scott Savarda, that having more rental experience did not necessarily make someone better qualified for the RideShare position. (ECF No. 43 at 6; ECF No. 34-2 Exh. E at ¶¶ 2-3.) Plaintiff responds that "The all-white committee for hiring decided against hiring the Branch of the Year and instead hired the assistant of the Branch Manager of the year who then went on to lose the position because she could not perform well in the position the Plaintiff was more then qualified for." (ECF No. 39 at 3.) Defendants deny that Ms. Perryman lost the position due to performance and instead explain that she voluntarily left the position. (ECF No. 43 at 7 n.28.)

Finally, Defendants argue that Plaintiff was not constructively discharged when his employment with Defendants ended in October of 2018.[1]

---

[1] Plaintiff's Complaint does not use the term "constructive discharge," however, Plaintiff seeks the remedies of back and front pay which are consistent with constructive discharge, and Plaintiff argues in his response that he was constructively discharged. (Complaint at 9-10; ECF No. 39 at 6.) Construing Plaintiff's *pro se* Complaint liberally, the Court will consider Plaintiff's Complaint as raising the issue of constructive discharge.

1        Plaintiff provides one photograph with his response which, he argues,
2 shows racial animus. The exhibit is titled "Racist and Discriminatory Picture of
3 Plaintiff's Supervisors (Joseph Brandhagen and Eric Whiteman) Putting Tampons
4 Throughout Plaintiff's Vehicle." (ECF No. 39 at 10.) Taken from Plaintiff's point of
5 view in the front passenger seat looking back, the photograph depicts two men,
6 the driver and a passenger sitting behind the driver, wearing sunglasses and
7 similar blue shirts, where the back passenger is holding a white cylindrical object
8 consistent with the shape of a tampon and smiling. The back passenger has a
9 handwritten label of "Joseph Brandhagen," and the driver, who can be seen
10 smiling, has a label of "Eric Whiteman." Plaintiff cites this exhibit in his response
11 when he explains that "Plaintiff took the action of leaving the toxic environment
12 that the Defendant had surrounded him with. (see exhibit A)"

### III.     LEGAL STANDARD

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). The court must view the facts in the light most favorable to the non-moving party and give it the benefit of all reasonable inferences to be drawn from those facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record

7

that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party satisfies Rule 56's requirements, the burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

## IV. DISCUSSION

To show a *prima facie* case of disparate treatment under Title VII of the Civil Rights Act and NRS 613.330(1)[2], a plaintiff must offer evidence that "give[s] rise to an inference of unlawful discrimination." *Reynaga v. Roseburg Forest Products*, 847 F.3d 678, 690 (9th Cir. 2017). A plaintiff may establish an inference of discrimination either by satisfying the prima facie elements from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973) or, in the alternative, by producing "direct or circumstantial evidence of discrimination demonstrating that a discriminatory reason 'more likely than not motivated' the employer." *Id.* at 691 (citing *Metoyer v. Chassman*, 504 F.3d 919, 931 (9th Cir. 2007)); *see also McGinest v. GTE Service Corp.*, 360 F.3d 1103 (9th Cir. 2004).

Under the *McDonnell Douglas* framework, "a plaintiff alleging disparate treatment under Title VII must first establish a prima facie case of discrimination. Specifically, the plaintiff must show that: "(1) he belongs to a protected class; (2) he was qualified for the position; (3) he was subject to an adverse employment action; and (4) similarly situated individuals outside his protected class were

---

[2] NRS 613.330 is almost identical to Title VII and courts apply the same analysis. *Stewart v. SBE Ent. Grp., LLC*, 239 F. Supp. 3d 1235, 1246 n.61 (D. Nev. 2017) (citing *Apeceche v. White Pine Cty.*, 96 Nev. 723, 615 P.2d 975, 977–78 (1980)).

treated more favorably." *Chuang v. Univ. of Cal. Davis Bd. of Trustees*, 225 F.3d 1115, 1123 (9th Cir.2000). When the plaintiff demonstrates their *prima facie* case, the burden shifts to the defendant to provide a legitimate, non-discriminatory reason for the adverse employment action. *Reynaga*, 847 F.3d at 691. If the defendant meets this burden, then the plaintiff "must then raise a triable issue of material fact as to whether the defendant's proffered reasons are mere pretext for unlawful discrimination." *Id.*

Plaintiff claims in his Complaint that "Defendants failed to promote Plaintiff and discriminated against Plaintiff with respect to his compensation, terms, conditions and/or privileges of employment because of Plaintiff's race [and national origin.]" (Complaint at ¶¶ 43-58.) The Court will consider three potential adverse employment actions: (1) Plaintiff's allegedly lower rate of compensation; (2) the allegedly discriminatory denial of Plaintiff's promotion; and (3) Plaintiff's alleged constructive discharge.

### A. COMPENSATION

Plaintiff makes two claims regarding his compensation: (1) Defendants reduced Plaintiff's compensation on two occasions while he was Assistant Manager in 2016; (2) Defendants paid Plaintiff at a different rate than his predecessor Paul Freeman when Plaintiff was Branch Manager in 2017. Regarding the first claim, Defendants explain that while Plaintiff's commission rate may have been reduced, his target pay was actually increased during the changes in question, and Defendants proffer authenticated pay plan documents to support these claims. (ECF No. 34-2 Exh. C.) Plaintiff does not contest the authenticity of these documents or proffer competing evidence, instead responding that he "did not agree with any of these 'pay plans' and tried to negotiate in good faith but was never given an opportunity[, u]nlike his counterparts." (ECF No. 39 at 1.) Plaintiff has not shown that he suffered an

adverse employment action,³ so Plaintiff has not met his burden to establish a prima facie case of discrimination regarding these incidents.

Regarding the second claim, Defendants first proffer evidence that Plaintiff was not in fact paid on the basis of 65% and 35%, respectively, of the revenue at the Sparks, Fallon, and Fallon NAS Enterprise locations. (ECF No. 34 at ¶ 23.) Defendants explain the difference between Plaintiff's pay and Paul Freeman's pay with two points: (1) Mr. Freeman had worked as a Branch Manager at that location for several years prior to Plaintiff, which would explain his increased pay; and (2) Enterprise was aware that Mr. Freeman had become the recipient of a "runaway" pay plan and decided to correct the pay plan structure when Plaintiff took the position. (ECF No. 34-2 Exh. D at ¶ 3; ECF No. 39 at 2.) Defendants also proffer evidence of the target pay of seven other Branch Managers for the 2016-17 fiscal year showing that Plaintiff's target pay was higher than six of the seven. (ECF No. 34-2 Exh. C.)

Plaintiff does not contest the authenticity of Defendant's exhibits nor proffer competing evidence. Regarding the other Branch Managers, Plaintiff responds only by claiming, without evidence, that some Branch Managers were operating in the Las Vegas region "which defendants decided had a higher cost of living then Reno, NV, hence not comparable." (ECF No. 39 at 2.) However, as Defendants point out, having a higher cost of living would reasonably lead to higher compensation, therefore the fact that these individual were compensated less than Plaintiff actually weakens Plaintiff's claim. (ECF No. 43 at 2-3.) Regarding Mr. Freeman, Plaintiff responds only with conclusory statements that the change in Plaintiff's pay was motivated by discrimination. Plaintiff has not shown that he suffered an adverse action regarding his compensation, nor has Plaintiff shown that similarly situated individuals outside of his protected class

---

³ The issue of whether Plaintiff was denied the ability to negotiate the terms of his employment will be considered under the issue of constructive discharge, *infra.*

were treated more favorably. *See Freyd v. Univ. of Oregon*, 990 F.3d 1211, 1229 (9th Cir. 2021) (affirming grant of summary judgment for the defendant based on lack of disparate treatment regarding compensation).

### B.     DENIAL OF PROMOTION

Plaintiff claims that he was denied a promotion to the RideShare Sales Executive position for discriminatory reasons, citing the fact that the position went to an allegedly less-qualified Caucasian woman, Cheryl Perryman, and that the hiring committee was "all-white[.]" (ECF No 39 at 3.) In response, Defendants explain with the declaration from Scott Savarda, who was on the hiring committee, that Ms. Perryman was similarly qualified to Plaintiff since "[t]he RideShare position focused more on sales abilities than rental experience and a Branch Manager would not necessarily be better suited for the position than an Assistant Manager." (ECF No. 34-2 Exh. E at ¶ 3.) Defendants also proffer the interview notes which, among other comments critical of Plaintiff, stated "other candidate was more qualified." (ECF No. 34-2 Exh. E.)

While Plaintiff has met the initial burden of showing that he suffered an adverse employment action that similarly situated individuals in his protected class did not suffer, Defendants have articulated legitimate, non-discriminatory reasons for their decision. Plaintiff has not proffered any evidence regarding this claim or contested the authenticity of Defendants' proffered evidence. Plaintiff's conclusory statements are insufficient to create a genuine issue of material fact for trial. *Villalta v. City & Cnty. of San Francisco,* 448 F. App'x 697, 699 (9th Cir. 2011); *cf. Dominguez-Curry v. Nevada Transp.* Dep't, 424 F.3d 1027, 1039 (9th Cir. 2005) (reversing grant of summary judgment for the defendant in a failure-to-promote discrimination case where there was evidence that agents of the defendant had made comments exhibiting hostility toward women and a preference for hiring a man for the position).

///

### C. CONSTRUCTIVE DISCHARGE

Plaintiff claims that he was constructively discharged when he left Enterprise in October of 2018 because it was a "toxic environment[.]" (ECF No. 39 at 6.) The doctrine of constructive discharge works to convert an employee's nominally voluntary resignation into an involuntary termination for remedial purposes when the employee resigns because working conditions became so intolerable that a reasonable person in the employee's position would have felt compelled to resign. *Poland v. Chertoff*, 494 F.3d 1174, 1184 (9th Cir. 2007). The bar for a claim of constructive discharge is "high." *Id.* The Court will consider two allegations relevant to Plaintiff's claim of constructive discharge: (1) Defendants' alleged refusal to negotiate with Plaintiff; and (2) the photograph which Plaintiff alleges shows discriminatory animus toward Plaintiff.

On the first, Plaintiff has not proffered any evidence to show that Defendants did in fact engage in negotiations with other similarly situated employees, nor does Plaintiff describe any specific employees or managers who allegedly engaged in such negotiations. On the second, the photograph proffered by Plaintiff—the only substantive evidence proffered by Plaintiff in this case—does not demonstrate a sufficiently intolerable work environment to allow Plaintiff's claim for constructive discharge to survive summary judgment. Even assuming the authenticity of the photograph, the photograph does not clearly depict Joseph Brandhagen and Eric Whiteman "putting tampons throughout Plaintiff's vehicle[,]" as Plaintiff alleges. (ECF No. 39 at 8.) Rather, it shows Mr. Brandhagen (again assuming that Plaintiff's identification of the individuals in the car is correct) holding what appears to be a single tampon while smiling with Mr. Whiteman and Plaintiff in the vehicle with him. As Defendants point out, Plaintiff does not explain how this photo shows animus against Plaintiff for his race or national origin. Even assuming, arguendo, that this photograph does evince some animus toward Plaintiff, a single instance of employment

1  discrimination is generally insufficient as a matter of law to support a finding of
2  constructive discharge. *Watson v. Nationwide Ins. Co.*, 823 F.2d 360, 361 (9th
3  Cir. 1987). The Court grants Defendants' motion for summary judgment on
4  Plaintiff's claims under Title VII and NRS 613.330(1).

## V. CONCLUSION

Plaintiff has not carried his burden to establish a genuine issue of material fact for trial on his discrimination claims. Fundamentally, Plaintiff's case suffers from a lack of evidence proffered by Plaintiff in response to the summary judgment motion. Plaintiff was advised by the Court on March 1, 2022, that Plaintiff was required to set out specific facts in the form of admissible evidence that contradict the facts shown in the defendant's declarations and documents. (ECF No. 36.) Plaintiff submitted no affidavits, depositions, documents, or other evidence beyond the single photograph. (The NERC Charge of Discrimination and Right to Sue Letter are evidence that Plaintiff exhausted his administrative remedies, but are not substantive evidence of discrimination.)

Because the Court grants Defendants' motion for summary judgment on the issue of discrimination, the Court need not analyze whether Enterprise Holdings, Inc. and EAN Holdings, LLC should be dismissed for lack of an employment relationship with Plaintiff. The Court also need not consider whether Plaintiff's state law claims should be dismissed as duplicative of the Tile VII claims. Furthermore, because the Court grants Defendants' motion for summary judgment, the Court need not consider Defendants' Motion to Dismiss Based on Plaintiff's Untrue *In Forma Pauperis* Application (ECF No. 35).

It is therefore ordered that Defendants' Motion for Summary Judgment (ECF No. 34) is granted.

It is further ordered that Defendants' Motion to Dismiss Based on Plaintiff's Untrue *In Forma Pauperis* Application (ECF No. 35) is denied as moot.

It is further ordered that this case be dismissed.

DATED THIS 6th day of January 2023.

_____
ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE